## CIRCUIT COURT OF LANCASTER COUNTY

Lancaster County
Board of Supervisors

v.

Cabell Cove Assocs. et al.

July 3, 1990

By JUDGE JOSEPH E. SPRUILL, JR.

The Court in this proceeding is asked by the Lancaster County Board of Supervisors (Board) to vacate a plat which was recorded in February, 1990, by Cabell Cove Associates (CCA) because of violations of the Lancaster County Subdivision Ordinance.

Cabell Cove Associates argues that because all lots within the development exceed five acres in size and all abut a public road, this is not a subdivision as defined by the ordinance and therefore the ordinance does not apply.

The only evidence offered by the Board is the plat filed as an exhibit with its Bill of Complaint. The plat shows a plan of twelve lots, eleven of which range from 5.002 acres to 5.865 acres in size, ten of which front for various distances on Mosquito Creek. The lots would be served by remote septic and drainfield easements grouped together in Lot 1. Three 40-foot ingress and egress easements lead from the public road to various points within the plan, providing access to and from the twelve lots.

Prior to its recording the subject plat in February, 1990, CCA had requested and obtained preliminary approval of the subdivision of the property into twelve lots of

approximately two acres each. CCA did not request final approval of the original plan.

On the original plan, the lots fronted along Mosquito Creek and comprised approximately the western one-half of the total property area. The eastern portion, as shown on the original preliminary plan, consisted of a single tract of thirty-four acres. The configuration of the waterfront lots described on the original plan is similar to the configuration of the lots shown on the plat recorded in February, 1990, with the exception that on the latter plat, the property which was formerly shown as the 34-acre parcel is now divided into lots which are linked by connecting strips of land approximately twelve feet in width to the waterfront lots some distance away. CCA acknowledges the purpose of this plan was to enable the developer to expand the size of the lots to more than five acres each.

The Lancaster County Subdivision Ordinance defines a subdivision as follows:

> 2-24. *Subdivision*: The separation in any manner of a parcel or tract of land into two (2) or more lots or other divisions of less than five (5) acres each for the purpose, either immediate or future, of transfer of ownership or of building or commercial land development, or, if a new street is involved in such separation, any separation of a parcel or tract of land . . . .

The Board argues that this development is subject to the requirements of its Subdivision Ordinance because:

(1) the 40-foot rights of way shown on the plat are "streets" within the meaning of the ordinance;

(2) the areas subject to rights of way, septic and drainage easements should be deducted from the lot acreage, thereby reducing the size of the lots to less than five acres;

(3) the configuration of the lots connected by the 12-foot strip are not in fact contiguous and therefore violate the spirit of the ordinance.

CCA maintains that the rights of way are not streets but private driveways; that the easement areas should not be excluded in determining the acreage of the lots; that each lot abuts a state highway (making streets unneces-

sary for access); and that there is nothing in the ordinance which prohibits the union of parcels in essentially distinct areas by connecting strips of land and considering the product a single lot. CCA also emphasizes that the subdivision ordinance is an administrative, not a legislative, act and should be construed strictly to protect the landowner.

I. *Are the 40 foot ingress/egress easements shown on the plat "streets" within the meaning of the ordinance?*

CCA argues that streets connote a public access, and the easements in question are intended to be private rights of way. The ordinance, however, defines and distinguishes between rights of way (§ 2-19), street (§ 2-20), and public street (§ 2-22). "Street," in the ordinance, is defined simply as the principal means of access to abutting properties. See § 2-20. In our opinion, whether or not they are "public" is not a determinative factor in this inquiry. The easement areas shown on the plat appear to provide the principal means of access to the lots. While CCA emphasizes that each lot fronts on the public road, access to waterfront portions of Lots 6, 7, 8, 9 and 10 can only be gained, if not over the designated rights of way shown on the plat, by travelling over the connecting strips. Such limited access does not appear to be practical, given the distance and narrowness of these connecting strips. If this were the intent of the developer, there would be no need for the access easements designated on the plat. Calling these access areas something other than "streets" does not, of itself, negate the fact that they do provide access. If they provide the principal means of access, they are streets within the definition of the ordinance, and if they are streets, this development comes within the purview of the subdivision ordinance.

II. *Should the areas designated for access, utility, septic and drainage easements be considered to reduce the lot size?*

The ordinance does not seem to address this question, and the Court deems it unnecessary to do so. For the Court to undertake to subtract land areas from the various lots

would require unwarranted guesswork and speculation by the Court.

III. *Do the lot configurations violate the ordinance?*

CCA concedes that the lots were shaped as they appear on the plat in order that each lot would exceed five acres in size, thereby relieving the developer of the necessity of compliance with the subdivision ordinance. Considerable effort and ingenuity have obviously been devoted to the task. However, if the layout of the lots is more an artificial contrivance than a logical and reasonable division of the property, significant public policy considerations arise.

Manifestly, in a practical sense, five of the lots on the plat are in reality two lots each, approximately 500 feet apart, joined by a 12-foot strip of land. No reason has been suggested, and certainly none is apparent, as to why these lots are shaped as they are except to provide for the additional acreage.

Section 5-13 of the ordinance requires that lots "shall not contain peculiarly shaped elongations solely to provide necessary square footage of area . . . ." Although this prohibition may have been drafted in another context, we think it has relevance here. It reflects the policy of the Board that unusual and contorted lot shapes should not be permitted for the purpose of evading the requirements of the ordinance.

The purpose of the Board's ordinance, as stated in § 1-1, is to establish standards and to facilitate the orderly beneficial growth of the Lancaster County community. To permit a developer to attach by relatively artificial means land in remote areas to lots in more desirable area for the purpose of escaping the requirements of the subdivision ordinance, is, in our opinion, in direct contravention to the purpose of the ordinance. Such a precedent could lead to untold mischief at a time when the county is trying to cope with its unprecedented growth. We conclude, therefore, that the lot shapes on the plan of Cabell Cove violate the spirit and purpose of the subdivision ordinance.

For the reasons stated here and in § 1 above, we will order that the defendants be compelled to vacate

the plat of Cabell Cove, dated January 5, 1990, and recorded February 2, 1990, in Plat Book 1, Page 63.

IV. *Sanctions*

The Board has requested that CCA be fined $2,000.00 pursuant to § 15.1-473 of the Code. This statute provides that a fine of $500.00 per lot may be imposed for violations of the subdivision ordinance.

We are of the view that the unusual circumstances of this case do not warrant the imposition of a fine, and therefore, the request is denied.